USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/8/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                              :
HASAHN MURRAY,                   :
                              :
                    Petitioner,  :            1:19-cr-702-GHW
                              :
          -v-               :       ORDER TO SHOW CAUSE
                              :
UNITED STATES,               :
                              :
               Respondent.  :
                              :
------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

Hasahn Murray filed a motion requesting an extension of his deadline to file a petition for *habeas corpus* under 28 U.S.C. § 2255 ("Section 2255") to challenge the legality of his conviction and sentence in this case. In his motion, Mr. Murray asserts that his counsel provided ineffective assistance both during plea negotiations and following the imposition of his sentence. But he acknowledges that he missed the deadline to file a petition for *habeas corpus* under Section 2255, and asks that the Court equitably toll the statute of limitations.

As set forth below, the Court construes Mr. Murray's motion as a petition for *habeas corpus* relief under Section 2255. Because Mr. Murray's petition is clearly time-barred and Mr. Murray has not provided sufficient justification for the Court to permit equitable tolling, the Court orders Mr. Murray to show cause why the Court should not dismiss his petition as untimely.

## I.    BACKGROUND

For years, Mr. Murray was a member of a violent street gang called the "Cash Money Boys." Sentencing Transcript, Dkt. No. 129 ("Tr."), 19:17-22. Gang members committed robberies, sold drugs, and controlled their turf with shootings and violence. *Id.* In June of 2010, in the most serious of the defendant's crimes as a member of that criminal conspiracy, Mr. Murray participated in a murder. Mr. Murray provided the gun that his co-defendant used to shoot and murder their

victim, David Moore.  *Id.* at 20:3-10.

Mr. Murray was not held to account for his crime for many years.  But on October 1, 2019, Mr. Murray was indicted in this case, charged with one count of murder in aid of racketeering and one count of murder through the use of a firearm.  Dkt. No. 2.  A superseding indictment was later returned, adding an additional charge that the defendant engaged in a racketeering conspiracy.  Dkt. No. 45.  The parties engaged in substantial litigation before Mr. Murray eventually pleaded guilty to participating in a RICO conspiracy, a lesser included offense within Court I of the superseding indictment.  Dkt. No. 64 at 5.

Mr. Murray's claim for habeas corpus relief arises out of the "pre-trial plea deal arrangements" leading up to his guilty plea.  Mr. Murray asserts that his attorney, David K. Bertan, encouraged him to take a plea deal.  Dkt. No. 164 (the "Motion") at 2.  Mr. Murray asserts that during those discussions, he informed Mr. Bertan of his concern that a prior state conviction pending appeal would be used by this Court "as a predicate offense to enhance his sentence."  *Id.* According to Mr. Murray, Mr. Bertan told him that the prior conviction would not affect Mr. Murray's sentence, but that if it did, and it was eventually reversed on appeal, Mr. Bertan would file a motion to reduce the time the Court "enhance[d] him for due to the previous conviction."  *Id.*

The Court sentenced Mr. Murray on May 31, 2022.  Dkt. No. 126 at 1.  The Court principally sentenced Mr. Murray to serve 170 months of imprisonment.  *Id.* at 2.  To arrive at that sentence, the Court departed downwards by 70 months pursuant to U.S. Sentencing Guideline 5G.1.3 to account for time that Mr. Murray had spent in prison as a result of a conviction for a related conviction.  Tr. at 6:18-7:3.  As part of the sentencing process, the Court took into account Mr. Murray's many prior criminal convictions, as reported in the pre-sentence report.  Tr. 21:6-21. The defendant was in criminal history category VI as a result of his criminal history points.  *Id.* at 6:8-14.  Mr. Murray was also in criminal history VI because of his status as a career offender.  *Id.* at

6:15-17.  One of the convictions that the Court considered and that contributed to its calculation of the defendant's criminal history points was a robbery conviction that was later vacated and, which, as described below, forms the basis of Mr. Murray's motion.  Mr. Murray did not appeal his conviction or sentence in this criminal case.

Shortly after Mr. Murray was sentenced in this case, in October of 2022, one of Mr. Murray's state convictions for robbery was reversed.  Motion at 2.  "[Mr. Murray] then attempted to contact [Mr. Bertan], in regards to the motion he said he would file for [Mr. Murray], but [Mr. Murray's] letters went unanswered."  *Id.* at 2–3.  Mr. Murray's correspondence went unanswered.  *Id.* According to Mr. Murray, it was "not until recently" that Mr. Bertan, likely prompted by another of Mr. Murray's *pro se* filings with this Court, contacted Mr. Murray, explaining that he had not received Mr. Murray's earlier correspondence because he had moved to a new office.  *Id.* at 3.

Mr. Murray states that in April 2024, "he was acquitted on all charges in regards to his state case."  *Id.*  To support this assertion, Mr. Murray provided the Court a copy of a New York Supreme Court Certificate of Disposition dated April 24, 2024.  Dkt. No. 178 ("Reply") at ECF 8 (the "Certificate").  Mr. Murray states that he did not receive the Certificate until "Mid May of 2024 due to delays in mailroom."  *Id.* at 5.  The Certificate shows five disposed charges under docket number IND-03525-16/002; three of which the Certificate describes as having been dismissed following appeal pursuant to CPL 470 with what the Certificate describes as a "Disposition Date" of April 16, 2024.  *Id.* at ECF 8.  Those charges are "Rob-2nd:Causes Physical Injury"; "Robbery-2nd:Aided by Another"; and "DF Aslt W/Int Caus Ser Inj W/Weap."  *Id.*

On January 30, 2026, the Court received Mr. Murray's "Motion Requesting for Exten[s]ion of Time to File 2255 Petition Out of Time Under the Equitable Tolling Doctrine."  Motion at 1.  In it, he asks the Court to toll the statute of limitations because he "seeks to file [a] motion to vacate his sentence based on a claim of Ineffective Assistance of Counsel."  *Id.*

In his Motion, Mr. Murray writes that the "crux of [his] claim is that not only did Bertan ill advise [him] to plead guilty to the instant offense(s) knowing that the court would indeed use the prior conviction . . . to enhance his sentence," but "he also lied to [Mr. Murray] and told him that the state case would not make a difference" in sentencing. *Id.* Furthermore, Mr. Murray argues that the fact of Mr. Bertram's "advising [him] to plead guilty and not attempt[ing] to hold [his] plea arrangements in abeyance while the state case was being reviewed, knowing the case was being reversed, was indeed a serious form of ineffectiveness." *Id.*

Mr. Murray adds that his claim "derives from Bertan not utilizing any defense strategies or negotiating tactics." *Id.* at 4. He asserts that Mr. Bertan failed to inform him of a possible sentencing cap in exchange for his plea. *Id.* Mr. Murray states that "the only reason why he pled guilty was because Bertan promised to file a post conviction remedy for him" and "basically tricked [him] into pleading guilty." *Id.*

Acknowledging that a petition for *habeas corpus* under Section 2255 would be untimely, in his Motion, Mr. Murray requests that this Court "grant him an extension of time to file," citing *Baldayaque v. United States*, 338 F.3d 145 (2d Cir. 2003). *Id.* at 1, 5. He argues that equitable tolling is permissible when counsel fails to file a "post conviction motion to vacate despite defendant's direction." *Id.* at 5. Mr. Murray then cites *Johnson v. United States*, 544 U.S. 295, 305 (2005) for the proposition that "a state court vacatur order was a 'fact' that began the limitation period of 2255." *Id.* at 5. Thus, although he acknowledges that any Section 2255 petition would be untimely, Mr. Murray takes the position that it is less untimely because the statute expired one year after his state conviction was overturned.

The Court issued an order on February 2, 2026, requesting that "the Government provide a brief history of the state offense, the vacatur of which Mr. Murray points to as the trigger date for the statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996." Dkt.

4

No. 165 at 1.  The Court also requested that the Government provide its "view regarding which date, if any, is the appropriate trigger date from which to calculate the statute of limitations."  *Id.* at 1–2.

The Government filed its response on March 9, 2026.  Dkt. No. 173.  In it, the Government asserts that "the operative vacatur date for purposes of any federal collateral review analysis is October 20, 2022," the date on which Mr. Murray's March 6, 2018 conviction was reversed by the New York State Court of Appeals.  *Id.* at 2.  By comparison, Mr. Murray argues that April 2024, "when he claims he was acquitted in state court[,] should serve as the operative trigger date."  *Id.*

Mr. Murray filed his Reply on March 19, 2026.  In it, he provided additional arguments in support of his application for equitable tolling, including "refusals from counsel, extensive and repetitive lockdowns, Notice of Appeal and correspondences between Mr. Murray and the Court concerning counsel, as well as other pertinent issues."  Reply at 5.  Mr. Murray's submission included additional information regarding the prior state conviction, its reversal, and its subsequent dismissal.  *Id.* at 2, 5, ECF p. 8.

## II.    DISCUSSION[1]

### A.  Mr. Murray's Extension Request Must Be Treated as a Habeas Petition

Although Mr. Murray labels his request as merely one for the extension of time to file a subsequent petition for habeas relief, his request is properly construed as a petition for *habeas corpus* relief.  District courts generally are without jurisdiction to consider the timeliness of a motion until a motion "is actually filed."  *Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001).  "Where a motion, nominally seeking an extension of time, contains allegations sufficient to support a claim under

---

[1] Because Mr. Murray is proceeding *pro se*, the Court construes each of his submissions in support of the Motion "liberally to raise the strongest arguments it suggests."  *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

section 2255, a district court is empowered, and in some instances may be required, under *Haines* [*v. Kerner*, 404 U.S. 519 (1972)][,] to treat that motion as a substantive motion for relief under section 2255." *Id.* at 83.

Mr. Murray's motion requesting an extension of time to file his Section 2255 petition should be construed as a substantive petition under Section 2255.  In his Motion, Mr. Murray states that he wishes to pursue an ineffective assistance of counsel claim and he describes the facts that he believes provide support for that claim.  Because the motion contains allegations sufficient to support a claim, the Court treats it as a substantive motion for *habeas corpus* relief.

If Mr. Murray does not want to pursue relief under Section 2255, he may notify the Court in writing within thirty days that he does not wish for the Court to evaluate his Motion as an application under Section 2255.  *See Castro v. United States*, 540 U.S. 375, 383 (2003); *Adams v. United States*, 155 F.3d 582, 584 (2d Cir. 1998) (per curiam).  Mr. Murray should note that a criminal defendant generally has only one opportunity within the limitations period for a full adjudication of his claims in a Section 2255 motion.  If Mr. Murray does not inform the Court of his intent within thirty days, his motion will remain designated as a motion under 28 U.S.C. § 2255.

### B.      Statute of Limitations

The Court directs Mr. Murray to show cause why his motion should not be denied as time-barred under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  AEDPA "imposes a one-year statute of limitations on motions to set aside sentences imposed, inter alia, 'in violation of the Constitution or laws of the United States.'"  *United States v. Wright*, 945 F.3d 677, 683 (2d Cir. 2019) (citing 28 U.S.C. § 2255(a), (f)), cert. denied, 589 U.S. 1227 (2020).  The one-year statute of limitations runs from the latest of a number of "triggering events" enumerated in the statute.  *Rivas v. Fischer*, 687 F.3d 514, 533 (2d Cir. 2012).  These events include:  (1) when the judgment of conviction becomes final; (2) when a government-created impediment to making such a

motion is removed; (3) when the right asserted is initially recognized by the Supreme Court, if it has been made retroactively available to cases on collateral review; or (4) when the facts supporting the claim(s) could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2255(f).

The fourth category of "triggering events" is at issue in this case.[2]  When a petitioner attacks "his federal sentence on the ground that a state conviction used to enhance that sentence has since been vacated. . . .[,] the [limitations] period begins when a petitioner receives notice of the order vacating the prior conviction, provided that he has sought it with due diligence in state court, after entry of judgment in the federal case with the enhanced sentence." *Johnson*, 544 U.S. at 298.  Here, Mr. Murray's March 6, 2018 conviction for second-degree robbery and related offenses was reversed by the New York Court of Appeals on October 20, 2022. *See People v. Hasahn D. Murray*, 39 N.Y. 3d 10 (2022).[3]  That conviction was included in the pre-sentence report considered by the Court at sentencing.  It yielded three of Mr. Murray's 14 criminal history points.  The Court accepts, for purposes of this order, that the vacated state conviction was used to enhance Mr. Murray's sentence.[4]  As a result, the statute of limitations began when Mr. Murray received notice of the order vacating that conviction.

The Court of Appeals' October 2022 decision in *People v. Murray*, 39 N.Y.3d 10 (2022), vacated Mr. Murray's robbery conviction.  In its opinion, the Court of Appeals ordered that: "the

---

[2] The petition would be even more untimely if the statute of limitations was measured from the date on which Mr. Murray's conviction became final.  Mr. Murray's judgment of conviction was entered on May 31, 2022. Dkt. No. 126. As he did not appeal, his conviction became final on June 14, 2022, fourteen days after the judgment was entered. *See* Fed. R. App. Pro. 4(b)(1) (allowing 14 days to file notice of appeal from judgment of conviction); *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) ("[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires.").  Measured from the date on which the judgment became final, the one-year limitations period expired on June 14, 2023, about two and a half years before Mr. Murray filed his motion.

[3] The vacatur of Mr. Murray's conviction was not based on the merits.  Contrary to Mr. Murray's assertion that he was "acquitted," Mr. Murray's conviction was vacated as a result of a procedural error:  "the trial judge erred in replacing the trial juror with an alternate following that discharge from service." *People v. Murray*, 39 N.Y.3d 10, 15 (2022).

[4] Mr. Murray's guidelines range was driven by the crime's offense level—40.  Regardless of whether Mr. Murray's criminal history category was VI—as it was with the inclusion of the three criminal history points resulting from the vacated robbery conviction—or V, as it would have been without those points, Mr. Murray's guidelines range of 240 months imprisonment would have been the same.  However, because the Court considered the existence of the conviction in sentencing Mr. Murray, the Court accepts that the conviction "enhanced" Mr. Murray's sentence.

order of the Appellate Division should be reversed and a new trial ordered." *Id.* at 16. "'Reversal'

by an appellate court of a judgment, sentence or order of another court means the *vacating* of such a

judgment, sentence or order." N.Y. Crim. Proc. Law § 470.10(1).

The Court understands that Mr. Murray received notice of the vacatur of his conviction

shortly after the Court of Appeals issued its decision. In his motion, Mr. Murray writes that "his

state conviction for his state charge was reversed in October of 2022 several months after [Mr.

Murray] got sentenced for his federal case. [Mr. Murray] *then* attempted to contact [Mr. Bertan], in

regards to the motion he said he would file." Motion at 2 (emphasis added). The Court infers from

this statement that Mr. Murray received notice of the order reversing his conviction shortly after the

opinion was issued in 2022. If Mr. Murray received notice of the vacatur of his conviction by

November 1, 2022, his petition was filed more than two years and three months late.

Mr. Murray argues that the Court should use a later date as the trigger—the date on which

he received notice that the charges against him were formally dismissed, rather than the date of

vacatur of the conviction. Mr. Murray contends that the Government "is misguided in it[]s reliance

on both the charge/cases which [he] had dismissed/acquittal in and the actual nature of the

dispositions including the relevant years concerned." Reply at 5. He argues that the correct trigger

date was in mid-May 2024, when he received notice of dismissal of the charges as shown in the

Certificate. *Id.*

However, the Court's ruling in *Johnson* benchmarked the date on which the statute would

begin anew as the date on which a petitioner received notice of the order "*vacating* the prior

conviction." *Johnson*, 544 U.S. at 298. The record presented to the Court does not explain why the

People of New York chose not to retry Mr. Murray and to instead permit the later dismissal of the

claims against him. But the date on which Mr. Murray received notice of that dismissal is not the

relevant benchmark—it is the date on which he received notice of the opinion vacating his

conviction.  And even if the later date applied, as Mr. Murray acknowledges, his petition would be quite untimely.[5]

### C.    Equitable Tolling

"The Supreme Court has confirmed that AEDPA's statute of limitations is not jurisdictional and 'does not set forth "an inflexible rule requiring dismissal whenever" its "clock has run."'" *Rivas*, 687 F.3d at 537 (quoting *Holland v. Florida*, 560 U.S. 631, 645 (2010)).  "This is because although AEDPA seeks to eliminate delays in the federal habeas review process, it does not do so at the expense of basic *habeas corpus* principles, or prior law that a petition's timeliness has always been determined under equitable principles." *Wright*, 945 F.3d at 684 (quotations and brackets omitted) (citing *Holland*, 560 U.S. at 649–50).  "As a result, even in the wake of AEDPA, a petitioner is entitled to equitable tolling of the one-year statute of limitations if he shows:  '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Id.* (quoting *Holland*, 560 U.S. at 649).

"To warrant equitable tolling, 'the circumstances of a case must be 'extraordinary.'" *Id.* (quoting *Holland,* 560 U.S. at 652).  "When determining what constitutes 'extraordinary' circumstances, . . . 'the proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" *Id.*

"Even when extraordinary circumstances exist, however, a petitioner must demonstrate diligence to qualify for equitable tolling." *Id.* at 685.  "The only diligence required for the application of equitable tolling is 'reasonable diligence'—we do not require 'maximum feasible diligence.'  Even so, 'we expect even *pro se* petitioners to know when the limitations period expires and to understand

---

[5] In his motion, Mr. Murray requests that the Court equitably toll the statute of limitations for a period of "283 days." Motion at 1.

the need to file a habeas motion within that limitations period.'" *Id.* (internal citation and brackets omitted) (first quoting *Holland*, 560 U.S. at 653, then quoting *Doe v. Menefee*, 391 F.3d 147, 177 (2d Cir. 2004)).

None of the facts described by Mr. Murray in his motion or his reply justify the invocation of equitable tolling in this case. In his motion, Mr. Murray states that after his state charge was reversed in October 2022, he attempted to contact Mr. Bertan, but received no response. Motion at 2–3. In his most recent submission to the Court, Mr. Murray adds that after receiving notice of the dismissal in summer 2024, he "repeatedly" contacted counsel, but again, received no response. Reply at 2. Then, "[n]otwithstanding a less than rudimentary understanding of the law and nearly no access to law library computer throughout majority of 2024–2025, Mr. Murray inquired into potential relief available from so-called Jailhouse lawyer." *Id.* at 2–3. Mr. Murray goes on to note the frequency of lockdowns that occurred in USP Canaan and his "inability to access legal materials" or "shop commissary." *Id.* at 3. Finally, Mr. Murray states that he "continued in his communications with the court, etc . . . demonstrating 'due diligence' as does Notice of Appeal which he filed."[6] *Id.* at 4.

For purposes of this order to show cause, the Court assumes without holding that Mr. Murray has shown that extraordinary circumstances justify equitable tolling.[7] "The presence of

---

[6] It is unclear what Mr. Murray is referring to, as there is no record that Mr. Murray communicated with this Court or that he filed a notice of appeal in this case. Between the date of his sentencing on May 31, 2022 and his filing of the motion on January 30, 2026, this Court did not receive a single filing from Mr. Murray. *See* Dkt. Nos. 125–164.

[7] Because Mr. Murray's lack of diligence is apparent, the Court assumes that extraordinary circumstances exist for purposes of this opinion but notes two points that undermine the assumption here. First, "[t]he impediments asserted by petitioner—including prisoner transfers, lockdowns, and limited access to legal papers and law libraries—are common to many prisoners during their incarceration. Such impediments do not constitute the type of "extraordinary circumstances" that would warrant equitable tolling of the statute of limitations." *Acosta v. United States*, No. 09 CR 1126 SAS, 2012 WL 206119, at *2 (S.D.N.Y. Jan. 23, 2012). Second, Mr. Murray correctly points out that "an attorney's conduct, if it is sufficiently egregious, may constitute the sort of 'extraordinary circumstances' that would justify the application of equitable tolling to the one-year limitations period of AEDPA." *Baldayaque*, 338 F.3d at 152-53. But the facts alleged here are not so egregious. They are far removed from the facts at issue in *Baldayaque*. For example, unlike *Baldayaque*, there is no allegation that Mr. Murray specifically requested Mr. Bertran to file a petition on his behalf. Indeed, the gravamen of Mr. Murray's petition is that he was unable to contact Mr. Bertran to make such a request.

extraordinary circumstances is not enough, however, to justify the application of equitable tolling.  A petitioner must also show that he acted with reasonable diligence, and that the extraordinary circumstances caused his petition to be untimely."  *Baldayaque*, 338 F.3d at 153.

The facts presented by Mr. Murray in support of his Motion do not demonstrate sufficient diligence to justify application of equitable tolling.  Mr. Murray's decision to wait for an attorney—or jail house lawyer—does not satisfy his obligation to diligently pursue his petition.  "Even where the extraordinary circumstances on which the petitioner rests his claim involve attorney incompetence, the petitioner must still demonstrate that he himself made reasonably diligent attempts to ensure that his petition was filed on time."  *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004).  "In other words, the act of retaining an attorney does not absolve the petitioner of his responsibility for overseeing the attorney's conduct or the preparation of the petition.  Particularly because petitioners often are fully capable of preparing and filing their habeas petitions *pro se,* and *pro se* status does not in itself constitute an extraordinary circumstance meriting tolling, it would be inequitable to require less diligence from petitioners who are able to hire attorneys than from those who are forced to proceed *pro se.*"  *Id.* (internal citations omitted).  Mr. Murray had a year from the date on which he received notice of vacatur of his conviction to file a petition for *habeas corpus* relief.  That Mr. Murray sent correspondence to Mr. Bertran that was not responded to does not justify Mr. Murray's failure to act on his own behalf.  Rather than relying on counsel—or a jailhouse lawyer—acting diligently, Mr. Murray could have filed his petition *pro se*, as he eventually did.

### III.    CONCLUSION

The Court construes Mr. Murray's motion at Dkt. No. 164 as a motion under 28 U.S.C. § 2255.  If Mr. Murray wishes for the Court not to treat his motion as an application under Section

---

Moreover, unlike *Baldayaque*, there is no allegation that counsel reassured the defendant or his family members that he was actively working on appropriate submissions.

2255, he must provide notice to the Court in writing of that fact no later than June 8, 2026. If Mr. Murray wishes to present any additional information to the Court for it to evaluate his application for equitable tolling—whether as to the existence of extraordinary circumstances or his exercise of diligence—he may submit an affidavit with those additional facts by June 8, 2026. If Mr. Murray does not do so, the Court will dismiss Mr. Murray's petition under Section 2255 as time barred.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to open a new civil action arising out of the motion pending at Dkt. No. 164, which the Court construes as a petition for *habeas corpus* relief under 28 U.S.C. § 2255, and assign the new civil action to Judge Woods. The Clerk of Court is also directed to mail a copy of this order to Mr. Murray.

SO ORDERED.

Dated:  May 8, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge